J. M. ATHERTON Co. *v.* IVES and others.[1]

*(Circuit Court, D. Kentucky.* April 29, 1884.

1. INTERSTATE COMITY—DEED OF ASSIGNMENT.
    A deed of assignment between residents of another state, valid according to the laws of the state where executed, is valid as to personal property in Kentucky.

2. TRANSFER OF PERSONAL PROPERTY.
    The right of a state to regulate the transfer of personal property within its jurisdiction must be exercised, and the intention to do so clearly expressed by

[1] Reported by Geo. Du Relle, Asst. U. S Atty.

statute or by settled policy, or a transfer valid by the law of the domicile of the owner will be held valid within such state.

3. **DEED OF ASSIGNMENT—PREFERENCE—FRAUD.**

The giving of a preference to one or more creditors is not, in itself, fraudulent as to creditors.

4. **KENTUCKY STATUTE—ACT OF 1856—GEN. ST. ART. 2, CH. 44.**

The act of 1856 does not operate to render void a deed of assignment giving a preference, but causes it to operate as a general assignment, upon a petition being filed within six months from date of the deed.

5. **PLEDGE—WAREHOUSE RECEIPTS—LIEN.**

Neither the custody of the warehouseman nor the pledge of whisky by delivery of the warehouse receipts, gives to the warehouseman or pledgee any general lien for debts not arising from the relation of warehouseman or pledgee.

At Law.

*Brown & Davie*, for plaintiff.

*W. O. Dodd*, for defendant Osborn.

BARR, J. Ives, Beecher & Co., who resided and did business in New York city, became embarrassed and made an assignment of all of their property of every kind to W. J. Osborn, in trust for the payment of their debts. In this deed of assignment they gave certain of their creditors preference over others. The deed is valid by the law of New York, where it was executed, and Osborn has accepted the trust and taken possession of the business and assets in New York. The plaintiff, with actual notice of the execution of this deed and its terms, attached certain property which belonged to Ives, Beecher & Co. for debts due it by them. This property was in this state, and in the warehouse of plaintiff, when the deed was executed and when the attachment was sued out. The warehouse receipts for the whisky attached had been delivered to plaintiff by Ives, Beecher & Co. some time before the execution of the deed, in pledge for certain of their notes given to raise money, and upon which plaintiff was to be indorser. The plaintiff, at the time of receiving these receipts, executed a writing in which it agreed that the warehouse receipts were held in trust as security for the payment of the notes, and when the notes were paid to return the pledged property, or its value, at specified rates. These notes have been paid by a sale of the whisky pledged, leaving a surplus after their payment, and the present contest is over this surplus.

Assuming that plaintiff's attachment has been properly issued and levied, the question is, who has the better right to the surplus of the pledged whisky? Plaintiff claims a superior right because of the levy of its attachment, and because of the actual possession of the whisky, which, it is claimed, gives it the right of retainer until its debts are paid. The deed of assignment which was made between residents of New York, and in that state, transferred Ives, Beecher & Co.'s personal property, which was in this state, unless there is some law or settled policy of the state preventing the application of the rule of comity by which personal property is allowed to be transferred according to the law of the domicile of its owner. Each state has

the right to regulate the transfer of property, both personal and real, within its jurisdiction, and this right exists, and may be exercised as to personal property of non-residents, if within the state, as well as residents. *Green* v. *Van Buskirk*, 5 Wall. 307, and 7 Wall. 139; *Hervey* v. *R. I. Locomotive Works*, 93 U. S. 664. But this right must be exercised by the state, and the intention clearly expressed in a statute or by the settled policy of the state, else, upon the principle of comity, a transfer of personal property, good and valid in the domicile of the owner, will be held good and valid here.

The learned counsel for plaintiff insist that this deed is fraudulent and void by the law of this state, because of the preferences given to certain creditors, and refers to article 1, *c.* 44, Gen. St. This article declares every conveyance or transfer made with the intent to delay or hinder or defraud creditors shall be void. The intent to delay and hinder creditors must be proven, and there is no evidence of such an intent, unless the preference given in the deed to certain creditors is such evidence. The mere fact of preference has never been held, in Kentucky, sufficient to make a deed of assignment fraudulent and void. Prior to the act of 1856, deeds of assignment, which were otherwise good, were never deemed invalid because of preferences given to some creditors over others. It was the settled law to allow such preferences. 8 Dana, 215; 4 B. Mon. 428; 18 B. Mon. 301; 3 Metc. 539. The act of 1856, which is re-enacted in the General Statutes, (article 2, *c.* 44,) provides that if a debtor, in contemplation of insolvency, makes a deed of assignment with the design to prefer one or more of his creditors to the exclusion in whole or in part of other creditors, such assignment shall operate as an assignment of all of the property and effects of such debtor for the benefit of all of his creditors. This law further provides that, upon petition filed within six months by a creditor, a court of equity may take control of the property and effects of the debtor, and administer them according to the provisions of the act. It will be observed that this act does not declare such assignments void, but that they shall operate as an assignment of all of the debtor's property for the benefit of his creditors, and be distributed equally, except certain trust debts are given preference by the act. The courts have declared that the act has no effect, unless a petition is filed *within six months.* If a petition is not filed within the time prescribed by the act, deeds of assignment giving preferences, as between creditors, are valid, and as effectual as if the act of 1856 had never been passed. *Wentworth* v. *Pointer, etc.*, 2 Metc. 460; *Whitehead* v. *Woodruff*, 11 Bush, 209.

In the latter case the court say:

"It has been repeatedly held that the giving of a preference to one or more creditors is not in itself fraudulent as to creditors, (18 B. Mon. 301; 3 Metc. 339; 2 Duv. 278; Id. 371; 8 Dana, 215;) and, although the fact is well established that Dunn confessed judgments in favor of these appellants, in contemplation of insolvency, and with the design to prefer them to the exclusion of his other creditors, such preference was not unlawful."

If, therefore, Ives, Beecher & Co. had executed this deed of assignment in Kentucky, it would not have been void, and would only have operated as a general assignment for the benefit of all their creditors in the event a petition had been filed within six months; and plaintiff could not have obtained a preference by the levy of an attachment on the assigned property at any time. The act of 1856 does not, we think, furnish a good reason for declaring this assignment, made in and according to the laws of New York, should be held invalid, and thereby giving plaintiff a preference over other creditors. If this is done, it must be in the exercise of what is called, in *Johnson* v. *Parker*, 4 Bush, 149, a "patriarchal and provident sovereignty." In that case the court seemed inclined, in its opinion, to invoke the exercise of this "sovereignty," and did give the home attaching creditor a preference over the trustee, under a deed of general assignment executed in another state, but the decision itself is placed upon the ground that it did not appear that the non-resident trustee had executed the proper bond, nor did it appear that the property attached was necessary to pay the debts secured by the deed of assignment. In *Bank of U. S.* v. *Huth*, 4 B. Mon. 428, and *Forepaugh* v. *Appold*, 17 B. Mon. 625, the same court expressly decided that the trustee, under a general deed of assignment executed at the domicile of the debtor, and valid there, had a better right than a non-resident-attaching creditor to the personal property of the debtor. These cases did not draw a distinction between home creditors and non-resident ones, nor was any notice taken of the fact that these attaching creditors were non-residents of the state; and we think such a distinction should never be drawn by a court, unless compelled to do so by legislative will, clearly expressed. It may be that the legislature of a state has the power to exercise such a "patriarchal and provident sovereignty," but this court will not assume such is the legislative will.

The warehouse receipts issued by plaintiff and delivered to Ives, Beecher & Co. were a symbolic delivery of the whisky, and gave them the title and constructive possession of it. The plaintiff, as warehouseman, was merely a bailee, and when the warehouse receipts were delivered, it became a pledgee as well; but neither relation gave it a general lien to cover debts or charges not connected with its position as warehouseman or pledgee for a specific purpose. Indeed, the express agreement of plaintiff to return the whisky when the specified debts were paid would seem to preclude a claim of a lien for debts other than those specified. *Baldwin* v. *Bradley*, 69 Ill. 32; *Duncan* v. *Brennan*, 83 N. Y. 487. The relation of these parties does not give plaintiff a common-law lien, and we know of no principle of law which would authorize plaintiff to retain possession of this property until its general indebtedness is paid by Ives, Beecher & Co.

The attachment should be discharged and petition be dismissed, with costs.