UNIVERSAL COAL CO. *v.* OLD BEN COAL CORP.

(Decided January 28, 1929.)

*Mr. W. F. Fox* and *Mr. C. W. Dillon,* for plaintiff in error.

*Messrs. Nichols, Morrill, Wood, Marx & Ginter,* for defendant in error.

CUSHING, J.    After the determination of this case on December 17, 1928, counsel for plaintiff in error applied for a rehearing and filed a motion to correct the record.    An affidavit of an official stenographer was filed in support of the motion to correct the bill of exceptions.    Under Section 11572a, General Code, this court has authority to correct a record or refer it to the trial court for correction.

We have concluded to consider the case as though the record were corrected, and for that purpose have examined the briefs and the record to determine the questions of law involved.

This action was brought by the Old Ben Coal Corporation against the Universal Coal Company for damages in the sum of $20,000 for breach of contract.

The Old Ben Coal Corporation in its amended petition stated that it entered into a contract with the defendant, by which the defendant promised and agreed to deliver to the plaintiff 100 cars of Eagle Gas run of mine coal at a price of $1.40 per ton, to be shipped in proper equipment, as fast as possible, to Tidewater No. 123, care of Wyatt Coal Sales Company, Newport News, Virginia, and to the Logan and Kanawha Coal Company, at Clifton Forge, Virginia, for which the plaintiff promised to pay $1.40 per ton; that on July 3 and 17, 1926, defendant delivered 2 cars of coal on each day, and on August 17, 1926, defendant by mistake in consignment delivered one car of coal; that the time for shipment was extended from time to time; that in the latter part of October, 1926, plaintiff refused further extension of time, and requested and demanded shipment and delivery according to contract; and that the defendant on or about November 9, 1926, failed and refused to ship said coal or any part thereof, except as stated, to plaintiff's damage in the sum of $20,000.

In its answer, the defendant admitted said contract and the price of the coal, and stated that said contract was subject to the condition of cash payment on or before the 15th of each month for all coal shipped during the preceding month, and added that, by the terms of that contract, no liability was to accrue to the defendant for failure to make delivery from causes beyond defendant's control; that the plaintiff did not comply with the condition to make payment on or before the 15th day of each month for coal shipped during the preceding month; that, after starting delivery, a fire destroyed the

power plant at the producing mine, and for the time being production of coal was impossible; and that it also had labor trouble. Defendant further answered that the Chesapeake & Ohio Railroad Company had placed an embargo upon coal for tidewater shipment.

Further answering, the defendant said that, during the time when the mine was non-producing, by reason of said fire, the defendant offered to supply plaintiff with Eagle Gas run of mine coal, produced from mines other than those specified in the oral part of the contract, but that the plaintiff, notwithstanding the fact that the coal offered to be delivered was of the same kind and character as that specified in the contract, refused to permit the defendant to substitute the coal of mines other than the Guyan Valley Fuel Company; that the defendant, through no fault of its own, was prevented by causes beyond its control and the acts of plaintiff from completing the contract in accordance with the terms of the written memorandum.

Plaintiff's reply denies that the coal was to be produced from the mines of the Guyan Valley Fuel Company, at Crown, West Virginia, and denies that said contract was subject to the condition of cash payment on or before the 15th day of each month for all coal shipped during the preceding month, and says that said contract was for 100 cars of said coal, payment to be made on completion of the delivery of said coal. Plaintiff admits the delivery of 4 cars under said contract, and denies that the defendant did anything further with respect to the performance of said contract, and denies that performance was made impossible by fire, or that the plain-

tiff designated any mine from which the coal called for in the contract was to be produced, and says that said contract was for Eagle Gas run of mine coal; and that no mine was designated. Plaintiff further denies that the shipment and delivery of coal described in said contract was prevented and made impossible by an embargo upon said coal, and says that Eagle Gas run of mine coal was shipped during the time covered by said contract to Tidewater and other shipping points covered by shipping directions.

Plaintiff further denies that there was any oral or verbal change in the written contract entered into by the plaintiff and defendant, and denies that the defendant offered to deliver any coal of the kind and character specified in the contract other than the 4 cars of coal delivered as aforesaid, and denies that it refused to accept delivery of coal from any mine producing coal of the kind and character described in said contract, and says that it continuously requested and demanded performance by the defendant, but that defendant did not perform.

Further replying, the plaintiff denies each and every other allegation in the answer not specifically admitted.

The jury returned a verdict for the plaintiff in the sum of $15,023.60.

On motion for a new trial, the court granted a remittitur and entered judgment for $10,920, with interest from the 2d day of April, 1928.

This action is prosecuted to reverse that judgment.

Counsel for plaintiff in error state six grounds claiming they constitute reversible error:

1. That the jury erred in basing its verdict upon the breach of contract of November 10, 1926, as there is no evidence that would support such a finding.

The record is that from the making of the contract until November 10, 1926, there were many communications, oral and written, about the delivery of the coal. On November 10, 1926, the plaintiff in error orally and in writing stated that it could do nothing further. This amounted to a refusal to deliver the coal, and, under Section 8447, General Code, there was a breach of the contract, and the jury was justified in so holding.

2. That the court erred in overruling the motion for a new trial, after having found that the verdict was excessive.

The record discloses that the price of coal varied from June 26, to November 10, 1926, and, as the measure of damage for a failure to deliver the coal would be the difference between the price stated in the contract and that on the date of the breach, the court was justified, on authority of *Pendleton St. Rd. Co.* v. *Rahmann*, 22 Ohio St., 446; *Cleveland & M. Rd. Co.* v. *Himrod Furnace Co.*, 37 Ohio St., 434; *Silverglade* v. *Von Rohr*, 107 Ohio St., 75, 140 N. E., 669, and *Alter* v. *Shearwood*, 114 Ohio St., 560, 151 N. E., 667, in calculating the amount due as shown by the record.

3. The court erred in the admission of testimony of transactions after July 20, 1926.

It is true that the contract provided that the coal should be delivered as soon as possible, and, while it is not in the contract, something was said about the coal being on wheels by July 20, 1926. And, if

it were not for the fact that the time was extended, the testimony of the prices and also of the extensions after July 20th would have been erroneous.

4. It is claimed that the court erred in admitting testimony as to negotiations after July 20th, as neither the allegations of the amended petition nor the evidence show any extension of time for delivery at the request of the defendant. Whether the failure to deliver the coal by July 20th was a breach could only be determined by the conduct of the parties. The plaintiff in error had a right to breach its contract on that day, and to act upon it, but there is evidence of the extensions of time after July 20th.

5. It is undisputed that the contract called for 100 cars of Eagle seam run of mine coal, and that the plaintiff in error at no time tendered to the defendant in error coal of the character described in the contract except the 5 cars delivered. It is needless to add that this is a written contract and that both parties were bound by it.

6. On the question of a failure to pay for the 5 cars of coal delivered—the plaintiff in error did not at any time refuse to ship because these 5 cars had not been paid for. It was simply a promise to deliver in the future. In the case of *Huntington & Finke Co.* v. *Lake Erie Lumber & Supply Co.*, 109 Ohio St., 488, 500, 143 N. E., 132, 136, the court in its opinion says, quoting from the case of *Burgie* v. *Hicks,* (D. C.), 203 F., 340, 341, "the buyer on such refusal being entitled to withhold further payment, using the price of the shipment delivered to offset his damages for breach of the contract or sue for such damages, leaving the seller to counter-claim for the amount due on such shipment."

From the record it is established that the price of coal in July, August, September, October, and to November 10th, was not as low as $1.40 per ton. In October, the price was as high as $6.30 per ton. The language of the Supreme Court in the case of *Huntington & Finke Co.* v. *Lumber Co., supra,* is applicable to the case at bar.

Counsel for plaintiff in error claim that the defendant in error demanded the names of the mines from which any coal contracted for would come. Something on this order may have been stated in negotiating the contract, but the contract itself provides for Eagle seam run of mine coal, but does not specify any mine. And, had the plaintiff in error tendered coal from that seam, the situation would be different from that presented by the facts in this case.

The plaintiff in error contends that there was an agreement that the coal was to come from the Guyan Valley mine. The contract does not so provide, and, as there was no tender of any coal of that seam, or from any other mine, it is useless to discuss that question further.

Counsel for plaintiff in error further contend that the court erred in giving special charges 10 and 12, as they involve a question of fact that does not appear in the record.

Under special charge 10, if, as we have stated, the defendant in error was entitled to hold the price of the coal of the cars delivered to cover damages sustained by it, the court did not err in giving special charge No. 10.

The same may be said of special charge No. 12.

There is no question from the record that the

contract between the parties was that the coal was to be Eagle seam run of mine coal, price $1.40 per ton, f. o. b. mine, to be delivered as speedily as possible; hence the claim of the plaintiff in error that it was excused from delivery on account of fire, embargo, and labor trouble at the Guyan Valley mine, is not tenable.

The record discloses that the fire at the Guyan Valley mine was the burning out of an armature of a rotary converter that at most would take a week or 10 days to replace. The only labor trouble was that the miners refused to work for the Guyan Valley mine until they were assured of receiving pay for their labor. There was no strike or outside interference. On the question of embargo, it is true that at certain intervals there was an embargo on coal to tidewater, but the record discloses that there was ample time when no embargo was in effect to ship these hundred cars, and many other hundreds of cars, from this district to tidewater, before plaintiff in error finally breached the contract.

For the reasons stated, the judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

HAMILTON, P. J., and ROSS, J., concur.